IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| GERALD L. KUBIK, | ) | 4:09CV3050 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| DANIEL P. BRACHT, ROBERT B. | ) | |
| ENSZ, and MERNA RECKER, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motions to Dismiss.  (Filing Nos. 14, 16, and 18.)  As set forth below, the Motions are granted.

## I.   *BACKGROUND AND SUMMARY OF COMPLAINT*

Plaintiff filed this matter on March 12, 2009.  (Filing No. 1.)  After extensions of time, each Defendant filed a Motion to Dismiss (filing nos. 14, 16, and 18) and a Brief in Support (filing nos. 15, 17, and 19.)  In response, Plaintiff filed a Motion to Strike the Motions to Dismiss and a Brief in Support.  (Filing Nos. 20 and 21.)

This matter relates entirely to Plaintiff's 2002 divorce proceedings in Nebraska state court and his ex-wife's attempt to collect the resulting judgment.  (Filing No. 1-3, Attach. 2, at CM/ECF pp. 2-28.)  Defendant Ensz was the Cuming County, Nebraska District Judge assigned to Plaintiff's divorce case, Defendant Bracht was his ex-wife's lawyer in those proceedings, and Defendant Recker is the Cuming County, Nebraska Clerk of the District Court.  (*Id.*)  Plaintiff alleges that on November 5, 2002, Defendant Ensz ordered that $21,071.80 be taken from Plaintiff's Wells Fargo bank account and delivered to his ex-wife's attorney, Defendant Bracht.  (Filing No. 1-2, Attach. 1, at CM/ECF pp. 3-5.)  Plaintiff claims that this "garnishment" proceeding violated his due process rights under the U.S. Constitution

because he was not given a chance to "defend [his] property." (*Id.* at CM/ECF p. 4.)

In addition, prior to filing this matter, Plaintiff created his own "claims process" to collect damages from Defendants. Using this process he created, Plaintiff attempted to collect damages from Defendants by sending them no fewer than six "claim documents" and "notifications to pay." (*See generally*, Filing No. 1.) In each "claim document," Plaintiff claimed the garnishment proceedings were improper, and demanded damages and a response from Defendants regarding the garnishment of his bank account. Plaintiff now requests that the court "validate" his claims against Defendants and award damages in excess of one million dollars. (*Id.* at CM/ECF p. 7; Filing No. 1-2, Attach. 1, at CM/ECF p. 5.)

## II.   *DEFENDANT ENSZ' MOTION TO DISMISS*

Defendant Ensz argues that the claims against him should be dismissed because he is entitled to absolute judicial immunity. (Filing No. 17.) The court agrees. Judges are absolutely immune from suits for damages arising from acts, whether or not erroneous, in their judicial capacity, as long as such actions were not taken in the complete absence of all jurisdiction. *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Judicial immunity is an immunity from suit, not just from damages, and "is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial." *Id.* Moreover, "[a] judge will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* at 12 (quotation omitted).

As the Supreme Court set forth in *Mireles*, "the relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself,'" and courts "look to the particular act's relation to a general function normally performed by a judge" in determining whether judicial immunity applies. *Mireles*, 502 U.S. at 13. The Eighth Circuit has specifically held that "conducting a trial is a judicial function" for which judges are

entitled to absolute immunity. *Hollowell v. Johnson*, 46 F. App'x 388, 388 (8th Cir. 2002) (unpublished). Moreover, conclusory conspiracy allegations are insufficient to overcome judicial immunity. *Johnson v. Esry*, No. 98-2573, 2000 WL 375269, *1 (8th Cir. 2000) (citing cases and noting that "conspiracy allegations must be pleaded with sufficient specificity and factual support to suggest meeting of minds").

Here, Plaintiff seeks only monetary relief against Defendant Ensz. (Filing No. 1-2, Attach. 1, at CM/ECF p. 5.) Summarized, Plaintiff alleges that Defendant Ensz presided over his divorce proceedings, and the subsequent garnishment proceedings when Plaintiff failed to pay the divorce judgment. (Filing Nos. 1 and 1-3, Attach. 2, at CM/ECF pp. 2-22.) There is no question that all of the actions Plaintiff complains of were taken by Ensz in his judicial capacity and within his jurisdiction. Defendant Ensz entered the "Decree of Dissolution" which led to the garnishment proceedings and held hearings with respect to those orders. (Filing No. 1-3, Attach. 2, at CM/ECF pp. 2-22.) These are certainly acts normally taken by judges. Defendant Ensz is therefore entitled to absolute judicial immunity, and Plaintiff's claims against him are dismissed with prejudice.

## III.   THE REMAINING MOTIONS TO DISMISS

In their Motions to Dismiss, the remaining Defendants argue, among other things, that this court lacks jurisdiction over Plaintiff's claims. (Filing Nos. 17 and 19.) Again, the court agrees. The *Rooker-Feldman* doctrine prohibits lower federal courts from exercising appellate review of state court judgments. *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983). In fact, federal district courts do not have jurisdiction "over challenges to state-court decisions . . . even if those challenges allege that the state court's action was unconstitutional." *Feldman*, 460 U.S. at 486; *see also Ballinger v. Culotta*, 322 F.3d 546, 548-49 (8th Cir. 2003) (dismissing claims under *Rooker-Feldman* doctrine where the relief requested in the complaint

3

would effectively reverse or undermine the state court decision or void its ruling and noting that "[f]ederal district courts thus may not 'exercis[e] jurisdiction over general constitutional claims that are 'inextricably intertwined' with specific claims already adjudicated in state court'') (citation omitted). Put simply, a federal district court does not possess authority in a civil rights case to review or alter final judgments of a state court judicial proceeding.

Here, Plaintiff requests that this court order Defendants to pay more than one million dollars because the state-court garnishment proceedings were improper. In particular, Plaintiff requests a refund of the more than $21,000 that was taken from his bank account pursuant to the state-court divorce decree and subsequent garnishment proceedings. (Filing No. 1-2, Attach. 1, at CM/ECF pp. 3-5.) Although Plaintiff claims that the garnishment proceedings were unconstitutional and violated his "due process" rights, awarding Plaintiff the relief he seeks would effectively void the state-court orders. As set forth above, the "*Rooker-Feldman* doctrine" bars this court from correcting or altering a state court judgment, and no declaratory or injunctive relief is available in this court to do so. In light of this, Plaintiff's claims are dismissed.

IT IS THEREFORE ORDERED that:

1.    Defendants Daniel P. Bracht's Motion to Dismiss (filing no. 18) and Merna Recker's Motion to Dismiss (filing no. 14) are granted. This matter is dismissed without prejudice to reassertion in the appropriate forum.

2.    Defendant Robert B. Ensz's Motion to Dismiss (filing no. 16) is granted. The claims against Defendant Ensz are dismissed with prejudice.

3.    A separate judgment will be entered in accordance with this Memorandum and Order.

4

4.     Plaintiff's Motion to Strike All Defendants' Motions to Dismiss (filing no. 20) is denied.

September 22, 2009.                    BY THE COURT:


                                      s/ Joseph F. Bataillon
                                      Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

5